IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| | : | |
| KAITLYN TANSEY and SARAH CAUDILL, on behalf of themselves and all similarly situated employees, | : | CIVIL ACTION |
| | : | |
| | : | No.: |
| | : | Hon. |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| KATHERINE'S CATERING AND | : | **COLLECTIVE AND CLASS** |
| SPECIAL EVENTS, INC., | : | **ACTION COMPLAINT** |
| KATHERINE'S CATERING | : | **AND JURY DEMAND** |
| DETROIT, LLC, KATHERINE'S | : | |
| CATERING ROYAL OAK, LLC, | : | |
| KATHERINE'S CATERING | : | |
| OAKLAND COUNTY, LLC, | : | |
| KATHERINE'S CATERING | : | |
| CANTON, LLC, KATHERINE'S | : | |
| CATERING OF BRIGHTON, LLC, | : | |
| and KATHERINE H. FARRELL, | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiffs, Kaitlyn Tansey and Sarah Caudill ("Plaintiffs"), on behalf of themselves and all similarly situated employees, bring this lawsuit against Defendants Katherine's Catering and Special Events, Inc., Katherine's Catering Detroit, LLC, Katherine's Catering Royal Oak, LLC, Katherine's Catering Oakland County, LLC, Katherine's Catering Canton, LLC, Katherine's Catering of Brighton, LLC, and Katherine H. Farrell  ("Defendants"), for unpaid wages and seek all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29

U.S.C. §§ 201, *et seq.*, and for unjust enrichment under Michigan law.  Plaintiffs assert their FLSA claims as a collective action under 29 U.S.C. § 216(b) and their unjust enrichment claims as a class action under Fed. R. Civ. P. 23.

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

2.     This Court has jurisdiction over this FLSA collective action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.     Defendants' annual sales exceed $500,000, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis. Defendants' employees engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

4.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts that form the basis of their federal claims.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants employed Plaintiffs in this district, conduct business in this

district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## **PARTIES**

6.    Plaintiff, Kaitlyn Tansey, is an individual residing in Ypsilanti, Michigan, and was employed by Defendants from July 2016 to the present.  Ms. Tansey signed a consent form, which is attached hereto as ***Exhibit A***.

7.    Plaintiff, Sarah Caudill, is an individual residing in Trenton, Michigan, and was employed by Defendants from June 2017 to the present. Ms. Caudill signed a consent form, which is attached hereto as ***Exhibit B***.

8.    Defendant Katherine's Catering and Special Events, Inc. is a Michigan corporation registered to conduct business in Michigan and its registered agent for service of process is Katherine H. Farrell, 359 Metty Dr., Ste. 3 & 4, Ann Arbor, Michigan 48103.

9.    Defendant Katherine's Catering Detroit, LLC is a Michigan limited liability company registered to conduct business in Michigan and its registered agent for service of process is Katherine H. Farrell, 359 Metty Dr., Ste. 3 & 4, Ann Arbor, Michigan 48103.

10.    Defendant Katherine's Catering Royal Oak, LLC is a Michigan limited liability company registered to conduct business in Michigan and its

registered agent for service of process is Katherine H. Farrell, 359 Metty Dr., Ste. 3 & 4, Ann Arbor, Michigan 48103.

11.    Defendant Katherine's Catering Oakland County, LLC is a Michigan limited liability company registered to conduct business in Michigan and its registered agent for service of process is Katherine H. Farrell, 359 Metty Dr., Ste. 3 & 4, Ann Arbor, Michigan 48103.

12.    Defendant Katherine's Catering Canton, LLC is a Michigan limited liability company registered to conduct business in Michigan and its registered agent for service of process is Katherine H. Farrell, 359 Metty Dr., Ste. 3 & 4, Ann Arbor, Michigan 48103.

13.    Defendant Katherine's Catering of Brighton, LLC is a Michigan limited liability company registered to conduct business in Michigan and its registered agent for service of process is Katherine H. Farrell, 359 Metty Dr., Ste. 3 & 4, Ann Arbor, Michigan 48103.

14.    Defendant Katherine H. Farrell is an individual and the President and co-founder of the Katherine's Catering business enterprise and, upon information and belief, resides in Ann Arbor, Michigan.

## FACTUAL ALLEGATIONS

15.     Defendants provide full-service, special-events catering to customers throughout southeast Michigan in connection with corporate events, weddings, and other social events.

16.     In addition to providing catering services at remote locations, Defendants also operate two venues in Canton and Wixom, Michigan, respectively.

17.     Defendants employ approximately 75 employees at any given time.

18.     Defendants produce over 2,500 events annually and, according to their website, "[s]ince 1985, the Katherine's team has produced over 65,000 events." [1]

19.     According to Defendants' website, "[o]ur service staff will exude steadfast hospitality and graciousness at every turn." *Id*.

20.     The service staff members employed by Defendants to work the catering events include hourly Event Supervisors, Servers, Bartenders, and Food Runners.

21.     All of Defendants' service staff members began their employment in a training program where they are provided with a "C.A.T.E.R. Card," which contained a training checklist for their supervisors to sign off as the service staff members are trained on certain tasks. Until the C.A.T.E.R. Card was completed,

---

[1] *See* https://www.katherines.com/about-us/ (last visited December 7, 2018).

the service staff members were paid $10.00 per hour and were not permitted to accept gratuities/tips nor participate in any gratuity/tip pools.

22.    Upon completion of the C.A.T.E.R. Card, the service staff members turned their Cards into Defendants and began working as full-fledged service staff members. From this point, the service staff members also began earning a higher hourly rate, plus gratuities/tips, and were eligible to participate in the gratuity/tip pools.

23.    Many of Defendants' service staff members worked in multiple service staff positions throughout their employment (*i.e.* Event Supervisors, Servers, Bartenders, and Food Runners) depending on Defendants' needs for each catering event.

24.    All of Defendants' service staff members, including Plaintiffs, recorded their work hours by either clocking in and out through Defendants' electronic timekeeping system or by submitting written time cards to Defendants' Human Resources office.

25.    All of Defendants' service staff, including Plaintiffs, earned a flat hourly rate plus any gratuities/tips received from patrons. They customarily and regularly received more than $30 per month in gratuities/tips.

26.    For example, Defendants employed Plaintiff Tansey as an hourly Server at $14.50 per hour (plus gratuities/tips) and as an hourly Event Supervisor

6

at \$14.50 per hour (plus gratuities/tips). *See e.g.* Tansey paystubs, attached as **Exhibit C**.

27.    Likewise, Defendants employed Plaintiff Caudill as an hourly Server at \$12.00 per hour (plus gratuities/tips) and as an hourly Bartender at \$12.00 per hour (plus gratuities/tips). *See e.g.* Caudill paystubs, attached as **Exhibit D**.

28.    All of Defendants' service staff, including Plaintiffs, and regardless of the service staff position in which they worked, were paid in the similar manner by Defendants. *See* **Exhibits C** and **D**.

29.    With respect to the gratuities/tips received from patrons, all of Defendants' service staff members, including Plaintiffs, were required to participate in Defendants' mandatory gratuity/tip-pooling policies and practices.

30.    However, Defendants' gratuity/tip-pooling policies and practices were unlawful. As Defendants' "Team Handbook" provided:

> **Gratuity**
> During an event there are several opportunities to earn extra income for great service given. A client may choose to leave a gratuity on the final invoice, a cash tip may be given to the supervisor at the end of the event, or tips may be given directly to the staff. All gratuities and cash gratuities are pooled equally based on the number of hours a person works on an individual event.
> ***
> Salaried and hourly 'managers' do not share in the gratuity pool unless scheduled as a server/supervisor/bartender and work their full scheduled event shift. Any temporary staff members hired to work an event will be included in the tip pooling. New hires are exempt from the gratuity pool until completion of the C.A.T.E.R. Card.

> **Katherine's distributes ninety-percent (90%) of the gratuity to the staff that worked the event**. Supervisors, bartenders, servers and food runners are all included. The gratuity is paid bi-weekly and is added to the staff member's paycheck. Gratuities are not disbursed until full payment is received for the event.

Defendants' Team Handbook at pp. 7-8 (emphasis added), a copy of which is in Defendants' possession.

31.    Defendants put this written policy into practice.  After every catering event, Defendants required Plaintiffs and all other service staff members to identify and turn in all gratuities/tips to an hourly Event Supervisor.

32.    The Event Supervisor was required to place all of the service staff's gratuities/tips into an envelope and submit them to Defendants' Human Resources office in Ann Arbor.  If the office was closed, the Event Supervisor was instructed to write on the envelope the name and date of the event, and to place the envelope into a drop box.

33.    Upon receipt of the gratuities/tips, Defendants re-allocated 90% of the total gratuities/tips to Plaintiffs and the service staff members on a pro-rata basis based on the hours they spent working the event.  Defendants paid these monies to the service staff as part of the bi-weekly payroll process.

34.    However, Defendants kept 10% of the gratuities/tips earned by Plaintiffs and the service staff during the events.  Those monies were retained by

Defendants and improperly given to non-tipped employees and/or otherwise used for Defendants' own business purposes.

35.     The FLSA, at Section 203(m)(2)(B), provides:

An employer may not keep tips received by its employees **for any purposes**, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit. [emphasis added].

36.     As such, none of the gratuities/tips received by Plaintiffs and the service staff during Defendants' catering events belonged to Defendants.

37.     Nevertheless, Defendants kept 10% of all gratuities/tips received by Plaintiffs and the service staff members during the relevant statutory period.

## FLSA COLLECTIVE ALLEGATIONS

38.     Plaintiffs bring this action on behalf of themselves and all similarly situated employees, defined as:

*All current and former hourly Event Supervisors, Servers, Bartenders, and Food Runners who worked for any Defendants any time during the past three years.*

(hereinafter referred to herein as the "Collective").  Plaintiffs reserve the right to amend this definition if necessary.

39.     Plaintiffs will pursue their FLSA claims on behalf of any Collective members who opt-in to this action pursuant to 29 U.S.C. § 216(b).

40.     Plaintiffs and the Collective members are "similarly situated," as that term is defined in 29 U.S.C. § 216(b), because, *inter alia*, they were subjected to

Defendants' mandatory pay policies and practices, as discussed in the preceding paragraphs.

41.    Excluded from the proposed Collective are employees/trainees who never completed the C.A.T.E.R. Card training program or otherwise never participated in Defendants' gratuity/tip-pools.

42.    Also excluded from the proposed Collective are Defendants' salaried exempt executive, administrative, and professional employees.

43.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the proposed Collective.

44.    Defendants were aware, or should have been aware, that federal law prohibited them from keeping their service staff's gratuities/tips for any purposes.

45.    Defendants' unlawful conduct was widespread, repeated, and consistent.

46.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they were or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful pay policies and practices;

and/or (d) their claims are based upon the same factual and legal theories.

47.     The employment relationships between Defendants and every proposed Collective member are the same and differ only by job title and rate of pay. The key issue – Defendants' unlawful retention of gratuities/tips – does not vary substantially among the proposed Collective members.

48.     There are many similarly situated current and former service staff members whose FLSA rights were violated and they would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

49.     Plaintiffs estimate the proposed Collective, including both current and former employees over the relevant period, includes hundreds of members.  The precise number should be readily available from a review of Defendants' personnel and payroll records.

<u>**RULE 23 CLASS ALLEGATIONS**</u>

50.     Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly Event Supervisors, Servers, Bartenders, and Food Runners who worked for any Defendants any time during the past three years.*

(hereinafter referred to as the "Michigan Class").  Plaintiffs reserve the right to amend this definition if necessary.

51.     Excluded from the proposed Michigan Class are employees/trainees

who never completed the C.A.T.E.R. Card training program or otherwise never participated in Defendants' gratuity/tip-pools.

52.    The persons in the Michigan Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts upon which the calculation of that number are presently within the sole control of Defendants, Plaintiffs reasonably estimate there are hundreds of individuals in the Michigan Class during the relevant statutory period.

53.    There are questions of law and fact common to the Michigan Class that predominate over any questions solely affecting its individual members, including but not limited to:

a.    Whether the gratuities/tips were the property of Defendants or the Michigan Class;

b.    Whether Defendants were unjustly enriched by keeping 10% of the gratuities/tips earned by the Michigan Class;

c.    The proper measure of damages sustained by Plaintiffs and the Michigan Class; and

d.    Whether Defendants should be enjoined from such violations in the future.

54.    Plaintiffs will fairly and adequately protect the interests of the Michigan Class and have no interests antagonistic to the class. Plaintiffs are represented by attorneys who are experienced and competent in both class and wage-and-hour litigation.

12

55.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The damages sustained by individual class members are small when compared to the expense and burden of individual prosecution of this litigation.  Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

56.     This case will be manageable as a Rule 23 class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have computer and payroll systems that will allow the class, merits, and damages issues in this case to be resolved with relative ease.

57.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

58.     Because Defendants acted and refused to act on grounds that apply generally to the Michigan Class and declaratory relief is appropriate in this case with respect to the Michigan Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.***
**UNLAWFUL RETENTION OF EMPLOYEES' GRATUITIES/TIPS**

59.    Plaintiffs hereby incorporate all of the preceding paragraphs.

60.    At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

61.    At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

62.    Plaintiffs were either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

63.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

64.    At all times relevant to this Complaint, Defendants were "joint employers" of Plaintiffs and all similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. 791.2(a).

65.    Plaintiffs consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b).  As this case proceeds, it is likely that other individuals will

file consent forms to join as party plaintiffs.

66.     Plaintiffs and all similarly situated employees were tipped employees as defined by the FLSA. *See* 29 U.S.C. § 203(t) (defining "tipped employee" as any employee engaged in an occupation in which he customarily and regularly receives more than $30 per month in tips).

67.     The FLSA, Section 203(m)(2)(B), provides:

> **An employer may not keep tips received by its employees for any purposes**, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

29 U.S.C. § 203(m) (emphasis added).

68.     Gratuities/tips are the property of the employee, even when the employer has not taken a tip credit:

> **Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA**. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

29 C.F.R. § 531.52 (emphasis added).

69.     Employer-mandated tip pools can only share gratuities/tips with other tipped employees:

> [V]alid mandatory tip pools . . . can only include those employees who customarily and regularly receive tips. However, **an employer may not retain any of the employees' tips for any other purpose**.

29 C.F.R. § 531.54 (emphasis added).

70.     The FLSA, Section 216(b), provides employees with a private right of

action against their employers for violating these tip-pooling laws:

> **Any employer who violates section 3(m)(2)(B) [29 USC §
> 203(m)(2)(B)] shall be liable to the employee or employees
> affected in the amount of the sum of any tip credit taken by the
> employer and all such tips unlawfully kept by the employer, and
> in an additional equal amount as liquidated damages**.

29 U.S.C. § 216(b) (emphasis added).

71.     Defendants violated the FLSA by keeping 10% of the gratuities/tips

received by Plaintiffs and all similarly situated employees.

72.     As a result, Defendants failed and/or refused to pay Plaintiffs and all

similarly situated employees the full compensation required by the FLSA, in

violation of 29 U.S.C. § 203(m).

73.     29 U.S.C. § 211(c) provides in pertinent part:

> (c)     Records

> Every employer subject to any provision of this chapter or of
> any order issued under this chapter shall make, keep, and
> preserve such records of the persons employed by him and of
> the wages, hours, and other conditions and practices of
> employment maintained by him, and shall preserve such
> records for such periods of time, and shall make such reports
> therefrom to the Administrator as he shall prescribe by
> regulation or order as necessary or appropriate for the
> enforcement of the provisions of this chapter or the regulations
> or orders thereunder.

74.     29 C.F.R.§ 516.2(a) and 29 C.F.R.§ 516.28 further require that every

16

employer shall maintain and preserve payroll or other records containing, without limitation, the total daily and weekly hours worked by each employee, the amount of tips reported to the employer, the amount of tips received by the employees, and any additions or deductions from wages paid.

75.    To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, Defendants also violated the aforementioned laws causing Plaintiffs damage.

76.    Defendants knew – or acted with reckless disregard as to whether – the retention of their employees' tips would violate federal law and Defendants were on notice of the FLSA's requirements at all relevant times.   As such, Defendants' conduct constitutes a willful violation of the FLSA.

77.    Because Defendants willfully violated the FLSA, a three (3) year statute of limitations shall apply to such violation pursuant to 29 U.S.C. § 255(a).

78.    Plaintiffs and all similarly situated employees are therefore entitled to the full amount of their unlawfully retained tips, plus additional amounts for liquidated damages, reasonable attorneys' fees, and costs. 29 U.S.C. § 216(b).

**COUNT II**
**(Rule 23 Class Action)**
**UNJUST ENRICHMENT**

79.    Plaintiffs hereby incorporate all of the preceding paragraphs.

80.    Plaintiffs and the Michigan Class worked for Defendants and were

paid a flat hourly rate plus any gratuities/tips.

81.   Plaintiffs and the Michigan Class conferred a material benefit upon Defendants by providing their customers with "steadfast hospitality and graciousness at every turn."

82.   Defendants received and accepted these desired work services from Plaintiffs and the Michigan Class, and enjoyed the benefits derived therefrom.

83.   As a direct result of their hard work, Plaintiffs and the Michigan Class were given gratuities/tips by Defendants' customers, which were the property of Plaintiffs and the Michigan Class.

84.   Plaintiffs and the Michigan Class did not agree or volunteer to give any portion of their gratuities/tips to Defendants.

85.   By retaining 10% of Plaintiffs' and the Michigan Class members' hard-earned gratuities/tips, Defendants were unjustly enriched. *See e.g.*, *Carter v. PJS of Parma, Inc.*, 2016 U.S. Dist. LEXIS 54171 (N.D. Ohio April 22, 2016) (denying employer's motion to dismiss and rejecting employer's argument that the banquet servers' unjust enrichment claims failed on the merits because the employer did not pay the servers with a tip credit and, thus, under the FLSA, employer claimed it had the right to retain the entire amount of any tip from banquet customers).

86.   An inequity will result if Defendants are permitted to retain any

portion of Plaintiffs' and the Michigan Class members' hard-earned gratuities/tips.

87.    As a direct and proximate result of Defendants' actions, Plaintiffs and the Michigan Class suffered monetary damages in the amount of gratuities/tips taken by Defendants, along with interest on those amounts.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.    An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment claim (Count II);

c.    An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and e-mail addresses of all members of the proposed Collective, and authorizing Plaintiffs to send notice of this action to all similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise them of their legal right to join and participate in this lawsuit;

d.    An Order designating Plaintiffs as the representatives of the proposed FLSA Collective and the Michigan Class; and undersigned counsel as Class counsel for the same;

e.    An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.    An Order declaring Defendants' violations of the FLSA were willful;

g.    An Order declaring Defendants were unjustly enriched by keeping gratuities/tips earned by Plaintiffs and the Michigan Class;

h.    An Order granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs, the proposed FLSA Collective, and the Michigan Class the full amount of damages available by law;

i.     An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

j.     An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

k.     An Order awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiffs, Kaitlyn Tansey and Sarah Caudill, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Date:  December 7, 2018             Respectfully Submitted,

                                    */s/ Jesse L. Young*
                                    Jesse L. Young, Esq.
                                    **KREIS ENDERLE, P.C.**
                                    8225 Moorsbridge, P.O. Box. 4010
                                    Kalamazoo, Michigan 49003-4010
                                    (269) 324-3000 (Tel.)
                                    jyoung@kehb.com