IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| KAITLYN TANSEY and SARAH CAUDILL, on behalf of themselves and all similarly situated employees, | : : : : | No.: 18-cv-13800 |
| | : | Hon. Judith E. Levy |
| Plaintiffs, | : | Mag. Mona K. Majzoub |
| v. | : : | |
| KATHERINE'S CATERING AND SPECIAL EVENTS, INC., KATHERINE'S CATERING DETROIT, LLC, KATHERINE'S CATERING ROYAL OAK, LLC, KATHERINE'S CATERING OAKLAND COUNTY, LLC, KATHERINE'S CATERING CANTON, LLC, KATHERINE'S CATERING OF BRIGHTON, LLC, and KATHERINE H. FARRELL, | : : : : : : : : : : | |
| Defendants. | : : | |

**JOINT MOTION FOR APPROVAL OF
FAIR LABOR STANDARDS ACT SETTLEMENT ,
INCLUDING APPROVAL OF COLLECTIVE CERTIFICATION AND
<u>NOTICE TO THE COLLECTIVE</u>**

For the reasons set forth in the attached Brief in Support, Plaintiffs and Defendants jointly move for approval of the Parties' settlement agreement, court-authorized notice to the collective, and for entry of a stipulated order of dismissal.

Dated: February 19, 2019

/s/*Jesse L. Young*
Jesse L. Young (P72614)
**KREIS ENDERLE, P.C.**
8225 Moorsbridge
P.O. Box. 4010
Kalamazoo, Michigan 49003-4010
(269) 324-3000
jyoung@kehb.com

*Attorneys for Plaintiffs*

/s/*Robert A. Boonin*
Robert A. Boonin (P38172)
Noah S. Hurwitz (P74063)
**DYKEMA GOSSETT PLLC**
2723 South State Street, Suite 400
Ann Arbor, Michigan 48104
(734) 214-7660
rboonin@dykema.com
nhurwitz@dykema.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| KAITLYN TANSEY and SARAH CAUDILL, on behalf of themselves and all similarly situated employees, | : : : : | No.: 18-cv-13800 |
| | : | Hon. Judith E. Levy |
| Plaintiffs, | : | Mag. Mona K. Majzoub |
| v. | : : | |
| KATHERINE'S CATERING AND SPECIAL EVENTS, INC., KATHERINE'S CATERING DETROIT, LLC, KATHERINE'S CATERING ROYAL OAK, LLC, KATHERINE'S CATERING OAKLAND COUNTY, LLC, KATHERINE'S CATERING CANTON, LLC, KATHERINE'S CATERING OF BRIGHTON, LLC, and KATHERINE H. FARRELL, | : : : : : : : : : : : | |
| Defendants. | : : | |

**BRIEF IN SUPPORT OF JOINT MOTION FOR
APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT,
INCLUDING APPROVAL OF COLLECTIVE CERTIFICATION AND
<u>NOTICE TO THE COLLECTIVE</u>**

## I.     <u>INTRODUCTION</u>

This lawsuit alleges violations of the Fair Labor Standards Act ("FLSA") for

unpaid wages. Although Defendants deny any liability, the Parties agreed to a

settlement and a stipulated order of dismissal. The settlement agreement between Plaintiffs and Defendants is contingent upon approval by the Court.

For purposes of allowing the Court to review the settlement agreement without destroying the confidential nature of the agreement, the Parties submitted their settlement agreement to the Court for *in camera* review in order to avoid making it part of the judicial record. Upon review, the Parties are confident the Court will find that their settlement agreement is fair and reasonable and should be given final approval.

## II.   STANDARD OF REVIEW

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

"The proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness." *Snook v. Valley Ob-Gyn Clinic, P.C.*, 2015 U.S. Dist. LEXIS 2989, *2-3 (E.D. Mich. Jan. 12, 2015) (*citing Lynn's Food*, 679 F.2d 1352-53). "If a settlement in an employee FLSA suit reflects 'a reasonable compromise over issues,' such as FLSA coverage or computation of back wages that are

'actually in dispute,' the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id.* (*citing Lynn's Food*, 679 F.2d at 1354).

The Sixth Circuit has identified seven factors to aid courts in the determination of whether a proposed FLSA settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Arrington*, 2012 U.S. Dist. LEXIS 157362 at *2-3; *see also Crawford v. Lexington-Fayette Urban Cnty. Gov't,* 2008 WL 4724499 at *3 (E.D. Ky. Oct. 23, 2008) (*citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).  The above list is not exhaustive and courts do not necessarily apply all of the factors. Rather, the factors are guideposts used to determine the fairness of a proposed settlement.  "A court applying these factors must do so in the context of the actual settlement." *Arrington*, 2012 U.S. Dist. LEXIS 157362 at *3.

## III.   THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE

This matter was originally filed on December 7, 2018. (Doc. 1).   The Complaint set forth a detailed recitation of factual and legal allegations pertaining

to FLSA claims and a sound basis for collective action certification under Section 216(b). The essence of Plaintiffs' claims is that Defendants violated the FLSA by retaining 10% of their employees' tips in violation of § 203(m).

After the Complaint was filed, Defendants unilaterally calculated and sent back pay to the proposed Collective members in the full amount of the 10% that was withheld from the tip pools since December 7, 2016.  Those payments were received by the proposed Collective members in early January 2019. However, liquidated damages were not paid.

Before a responsive pleading was filed, and before engaging in formal discovery, counsel for the respective Parties began discussing the merits and defenses at issue in the case and the possibility of an early resolution.  Specifically, before Congress amended the FLSA in March 2018 to make clear that all tips are the property of the employee, the law was unsettled and many cases were litigated over the issue of whether employers could retain any portion of tip pools where the employer did not take a tip credit. *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010); *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442 (4th Cir. 2015); *Oregon Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080 (9th Cir. 2016); *see also* the U.S. Department of Labor's varying interpretations of the relevant FLSA regulations involving tipped employees.

6

Here, the Parties agreed to exchange some basic and limited discovery documents. After a full review of this information and open and full debate over the legal and factual issues, the Parties, who have been represented by experienced counsel at all times, agreed to a fair, reasonable, and just compromise of disputed issues.  Ultimately, Defendants agreed to pay back the withheld 10% of tips for the two years prior to the Complaint being filed, full liquidated (double) damages, and Plaintiffs' litigation costs and attorneys' fees.  In exchange, Plaintiffs agreed to not seek a third year of damages under the FLSA's willfulness standard.

After the general terms of the settlement were reached, the Parties began the process of exchanging confirmatory payroll and tip-out information and drafting the settlement agreement. With compromise from both sides, the settlement agreement now before the Court for approval was reached.

The negotiations leading to this settlement were adversarial, non-collusive, and done at arms' length.  The Parties share an interest in fully and finally resolving the issues raised in this action.  Because the Parties recognized the expense and risks associated with prosecution and defense through trial and any possible appeal, as well as the risk of uncertainty of the outcome inherent in any litigation, they agreed to be bound by the settlement agreement which they now ask this Court to approve. The Parties have conditioned the settlement agreement upon the Court's approval of all its terms.

The general terms as set forth in the settlement agreement are as follows:

1.     The parties ask the Court to approve the Collective as being all staff from whom any of the Defendants withheld 10% of each staff member's share of the tip pools managed by Defendants during the period December 7, 2016 (i.e., two years prior to the filing of the Complaint) through November 25, 2018 (the date Defendants ceased withholding 10% of the tip pools).

2.     The parties also ask the Court to approve the proposed Notice to members of the Collective class (*Exhibit B* to the settlement agreement).  This Notice, along with a consent form, will be mailed to all members of the Collective by a mutually selected Third Party Administrator (i.e., Rust Consulting), and the members will then have 60 days to return the consent forms to the Third-Party Administrator.  The Third-Party Administrator will then provide Plaintiffs' counsel with the forms for filing with the Court.

3.     Once filed, Defendant Katherine Catering and Special Events, Inc., will within 14 business days thereafter mail by certified mail checks equal to the 10% of the tip pools withheld by Defendants, as may be applicable, from the members with timely provided and filed consent forms with the Court.  An accounting of the payments will then be provided to Plaintiffs' counsel.  These payments represent the 100% of the liquidated damages the Collective's members have claimed for the period at issue, i.e., an amount equal to the 10% withheld

8

during that period.  (As indicated above, an identical amount has already been sent to the Collective's members prior to the filing of this Motion, as wages due.) Collective members will have 60 days from mailing to negotiate those checks.

4.    The above payments and Notices will constitute a full settlement of all wage related claims of any kind for the period through November 25, 2018, with the extended period being added as part of the consideration for this early settlement and in recognition of Defendants' contention that it did not willfully violate any pay obligations during that period because of the shifting status of the law underlying the ownership of monies in tip pools.

5.    Plaintiffs' counsel will be paid by Defendant Katherine's Catering and Special Events, Inc., 50% of the attorneys' fees approved by the Court at an amount not to exceed the amount specified in the settlement agreement, plus all of the costs similarly described in the settlement agreement, and the other 50% after the later of an Order dismissing this matter with prejudice and without costs or fees except as required by the settlement agreement, or 10 business days after the mailing of the aforementioned payments to the Collective's members.

6.    Upon the mailing the aforementioned checks, the parties will provide the Court with a notice that the settlement terms have been satisfied and ask the Court to dismiss this action in its entirety, with prejudice and without costs or fees (other than those required by the settlement agreement).

### A.    THE ABSENCE OF FRAUD OR COLLUSION IN THE SETTLEMENT

In the instant case, there is a *bona fide* dispute over whether Defendants violated the FLSA, at least prior to March 2018.  Plaintiffs allege Defendants violated the FLSA and were unjustly enriched because they withheld 10% of Plaintiffs' tips for their own business purposes. Doc. 1, Complaint at ¶¶ 60-78.

Defendants, on the other hand, assert that Plaintiffs' allegations are without merit, at least prior to the relevant March 23, 2018 amendments to the FLSA, because the law was unsettled regarding whether employers could withhold any portion of employees' tips where no tip credit was taken.

Based on the amount to be paid to Plaintiffs in this settlement, it is clear there was no fraud or collusion.  The settlement will provide Plaintiffs with substantial amounts equal to all of their conceivable liquidated damages for two years (in addition to the actual amounts withheld during that period and which have already been sent to all Collective members), and will eliminate the risks and costs both sides would bear if this litigation continued to resolution on the merits. The Parties exchanged relevant documents and payroll data to educate each other about their respective positions. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

**B.      COMPLEXITY, EXPENSE, AND LIKELY DURATION OF THE LITIGATION**

The complexity, expense, and length of continued litigation militate in favor of this settlement.  Both sides acknowledge that the Parties' respective positions are uncertain due to unsettled legal theories.  Should this matter continue, the Court would be required to rule on Plaintiffs' pre-discovery motion for conditional certification under the FLSA, 29 U.S.C. § 216(b), and court-authorized notice to the proposed Collective.

Once conditional certification is decided, any number of scenarios could result.  If conditional certification is granted, the case will become more complex as the Parties would be required to undertake the notice process and allow for an opt-in period for employees to join the case.  From there, the Parties will be engaged in discovery (potentially class discovery) for a lengthy period of time, likely followed any combination of dispositive motions, motions which would be complex due to the unsettled state of law, i.e., at least prior to the March 2018 statutory amendments.

If Plaintiffs ultimately prevailed at trial, Defendants would be faced with the prospect of a verdict against it and the obligation to pay Plaintiffs' attorneys' fees and costs.  If Defendants ultimately prevailed, Plaintiffs face dismissal of their claims and little to no recovery.  The Parties agree that either outcome is possible

in this litigation (at least prior to March 2018). For these reasons, this settlement is a reasonable means for the Parties to minimize future risks and litigation costs.

### C. AMOUNT OF DISCOVERY ENGAGED IN BY THE PARTIES

Formal discovery has not commenced in this case. However, as part of their settlement discussions, the Parties exchanged numerous documents and other data relevant to Defendants' pay practices and Plaintiffs' pay records. The Parties reviewed this information, shared it with their respective clients, had discussions about it, and ultimately used it to evaluate and confirm the merits of the respective claims and defenses. One of the driving factors in this settlement was the desire to settle the case prior to incurring the attorneys' fees and costs associated with conducting formal discovery.

### D. THE LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs' likelihood of success on the merits and the amount they would be awarded is uncertain, at least prior to March 23, 2018, further suggesting that this settlement is fair and appropriate. Plaintiffs assert, and Defendants deny, that they are owed the withheld tips due to Defendants' alleged violations of the FLSA. The range of possible recovery by Plaintiffs is open to dispute. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both Parties, the specific amount of their

recovery is uncertain.   Thus, this proposed settlement is a fair and reasonable settlement in relation to the potential risks and recovery in this case.

### E.   THE OPINIONS OF CLASS COUNSEL AND THE CLASS REPRESENTATIVES

No collective group has been certified in this case, conditionally or otherwise.  Nevertheless, the Parties are stipulating to send a proposed notice to the proposed Collective members to inform them of this settlement and to allow them to submit a consent form to join in the settlement. Plaintiffs' counsel and the named Plaintiffs are of the opinion that this proposed settlement is a fair and reasonable compromise of the disputed issues for all proposed Collective members. This is evidenced by the named Plaintiffs' signatures on the settlement agreements.

### F.   THE REACTION OF ABSENT CLASS MEMBERS

There are currently no "absent class members" in this case.   Plaintiffs brought this case under the FLSA and its collective action provision but never filed a motion for conditional certification.   Additionally, many of the proposed Collective members have already expressed interest in participating in this litigation by filing a consent form (See Docs. 3, 5-6, 9, and 11).  Further, because FLSA collective actions employ an "opt-in" mechanism, as opposed to the "opt-out" mechanism of Rule 23, no one is bound by this proposed settlement except the Defendants and any opt-in Plaintiffs.

## G.   THE PUBLIC INTEREST

The public interest is served by the proposed settlement as it serves the purpose and intent of Congress in enacting the FLSA: "to raise substandard wages and to give additional compensation for overtime work … thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)).

## IV.   PLAINTIFFS' SERVICE AWARDS SHOULD BE APPROVED

The Settlement Agreement provides for a service award to each named Plaintiff in addition to their settlement payment. Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted); *Belmont v. Homes of Opportunity, Inc.*, 2018 U.S. Dist. LEXIS 209920, *5 (E.D. Mich. Dec. 13, 2018).

In this case, Plaintiffs believe the service awards sought under the proposed settlement reflect efforts by each of the two named Plaintiffs and acting as the public face of this litigation. Each named Plaintiff engaged in numerous conferences with Plaintiffs' Counsel and provided substantial documents and other information. Further, the named Plaintiffs stayed informed on the case from the outset and have performed a remarkably valuable service, both to their co-workers and to the public as a whole. Thus, the service awards are warranted.

## V.   PLAINTIFFS' ATTORNEYS' FEES AND COSTS

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

Payment of a plaintiff's fees are *mandatory* under the FLSA, the amount of which has carries no relation to the amount of damages ultimately recovered by a plaintiff. *See e.g., Williams v. Hooah Sec. Servs. LLC*, 2012 U.S. Dist. LEXIS 40945, *4 (W.D. Tenn. Mar. 26, 2012) (". . . the amount of attorney's fees may exceed the amount of damages awarded to plaintiffs given the nature and purpose of the FLSA . . .") (*citing Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994); *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) ("An

award of attorney fees [under the FLSA] may exceed the amount in controversy.")
(*citing Michigan Window Cleaning Co. v. Martino*, 173 F.2d 466 (6th Cir. 1949)).

The FLSA's attorneys' fees provision seeks to ensure "effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (internal quotation marks omitted). In calculating the fee award, the Court should not put undue emphasis on the amount of the plaintiffs' recovery because an attorney fee award in a FLSA case "encourage[s] the vindication of congressionally identified policies and rights." *Id.* at 1134-35 (internal quotation marks omitted) (alteration in original). In enacting the FLSA, Congress intended that the wronged employee should receive his full wages "without incurring any expense for legal fees or costs." *Roofers, Local 307 v. G & M Roofing*, 732 F.2d 495, 502 (6th Cir. 1984) (*citing Maddrix v. Dize,* 153 F.2d 274 (4th Cir. 1946)).

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

Here, Plaintiffs' counsel contends that its attorneys' fees and costs are reasonable given the legal theories presented in the case and the amount of resources expended to investigate, research, and analyze Plaintiffs' claims. Defendants do not contest Plaintiffs' Counsel's contentions or representations in this regard. Specifically, Plaintiffs' counsel spent a significant amount of time speaking with potential plaintiffs and identifying their claims. Plaintiffs filed a detailed FLSA collective action Complaint. (Doc. 1). Thereafter, Plaintiffs' counsel prepared for the conditional certification process, investigated other potential claims and filed numerous consent forms, engaged in a lengthy settlement negotiation process, reviewed documents and data related to the claims and defenses in this case, negotiated the settlement agreement, and filed the instant motion. These activities are necessarily time consuming.

Plaintiffs submit that their negotiated attorneys' fees and costs are reasonable and should be approved. Again, Defendants do not contest Plaintiffs' Counsel's representations in this regard. Per Plaintiffs' Counsel, the relevant factors for determining the reasonableness of a lodestar are derived from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), which the Sixth Circuit adopted in *Paschal v. Flagstar Bank,* 297 F.3d 431 (6th Cir. 2002). Upon request, Plaintiffs' Counsel will make their contemporaneously kept and detailed time records available to the Court for *in camera* review.

17

Lastly, courts often approve an amount of attorneys' fees and costs that are not proportional – and in fact exceed – the plaintiffs' FLSA damages. This is because most FLSA claims do not involve significant amounts of money (per employee) and often times the attorneys' fees and costs are more than the FLSA damages awarded. See, for example, the following FLSA cases previously handled by Plaintiffs' counsel within the Sixth Circuit:

- *Bright v. Diversified Roofing*, Case No. 15-cv-10527 (E.D. Mich.) (J. Levy) (approving lodestar of $6,000 and FLSA damages of $2,216);
- *Shipes v. Amurcon Corp.*, Case No. 10-cv-14943 (E.D. Mich.) (J. Roberts) (approving lodestar of $200,000 and FLSA collective damages of $100,000);
- *Duran v. Sara Lee*, Case No. 11-cv-00313 (W.D. Mich.) (J. Jonker) (approving lodestar of $600,000 and FLSA collective damages of $125,000);
- *Visner v. Michigan Steel Indust., Inc.*, Case No. 14-cv-12786 (E.D. Mich.) (J. Duggan) (approving lodestar of $22,500 and FLSA damages of $5,078.40);
- *Downey v. Richland Cnty.*, Case No. 15-cv-01934 (N.D. Ohio) (approving lodestar of $13,650 and FLSA damages of $1,127.86);
- *Gray v. Restaurant Staffing*, Case No. 15-cv-14109 (E.D. Mich.) (J. Tarnow) (approving lodestar of $5,000 and FLSA damages of $2,637.14);
- *Sweet v. Dr. Pepper Snapple Group, Inc.*, Case No. 15-cv-00479 (J. Maloney) (W.D. Mich.) (approving lodestar of $14,000 and FLSA damages of $9,000);
- *Cody v. U.S. Servico*, Case No. 15-cv-10170 (E.D. Mich.) (J. Tarnow) (approving lodestar of $21,000 and FLSA damages of $13,681.75);
- *Tarver v. Best Value Pharm.*, Case No. 14-cv-13256 (E.D. Mich.) (J. Cox) (approving lodestar of $21,700 and FLSA damages of $4,545);
- *McAdoo v. Verizon Wireless*, Case No. 14-cv-10257 (E.D. Mich.) (J. Roberts) (approving lodestar of $25,742 and FLSA damages of $6,758);
- *Carillo v. Old Orchard*, Case No. 13-cv-01167 (W.D. Mich.) (J. Jonker) (approving lodestar of $30,000 and FLSA damages of $4,000); and

18

- *Davis v. TransNav*, Case No. 13-cv-12590 (E.D. Mich.) (J. Edmunds) (approving lodestar of $60,000 and FLSA damages of $15,000).

As such, Plaintiffs' Counsel contends that its fees and costs in this settlement are reasonable, and Defendants do not contest that contention.

## VI.   CONCLUSION

For the reasons stated above, the Parties respectfully requests that the Court enter and order giving final approval to the Parties' settlement and terms contained therein, including the approval of the proposed Notice to the Collective.


Dated:  February 19, 2019


/s/*Jesse L. Young*                                   /s/*Noah S. Hurwitz*
Jesse L. Young (P72614)                       Robert A. Boonin (P38172)
**KREIS ENDERLE, P.C.**                     Noah S. Hurwitz (P74063)
8225 Moorsbridge                                 **DYKEMA GOSSETT PLLC**
P.O. Box. 4010                                        2723 South State Street, Suite 400
Kalamazoo, Michigan 49003-4010     Ann Arbor, Michigan 48104
(269) 324-3000                                       (734) 214-7660
jyoung@kehb.com                                  rboonin@dykema.com
                                                              nhurwitz@dykema.com
*Attorneys for Plaintiffs*

                                                              *Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, thereby serving all counsel of record.

/s/ Jesse L. Young

Jesse L. Young, Esq.

**KREIS ENDERLE, P.C.**

8225 Moorsbridge

P.O. Box. 4010

Kalamazoo, Michigan 49003-4010

(269) 324-3000 (Tel.)

(269) 324-3010 (Fax)

jyoung@kehb.com